[No. 20456. In Bank. — December 29, 1888.]

THE PEOPLE, RESPONDENT, *v.* PHILIP O'BRIEN, APPELLANT.

CRIMINAL LAW — HOMICIDE — EVIDENCE — RES GESTÆ — CLOTHING OF DECEASED — SPECIFIC OBJECTION — APPEAL — OBJECTION FOR FIRST TIME. — Upon the trial of a defendant accused of murder, the clothing worn by the deceased at the time of the homicide is admissible in evidence as part of the *res gestæ*. An objection to the admission in evidence of a coat worn by the deceased when killed, that the best evidence is the testimony of the doctor as to the wound, and that is superior to any holes in the old clothes, is not well taken; and in order that defendant should avail himself upon appeal of the further objection that the coat was not shown to have been in the same condition at the trial as when taken from the body of deceased, that specific objection should have been taken in the court below.

ID. — INSTRUCTIONS. — The court may properly refuse instructions upon questions upon which it has already fully instructed the jury.

ID. — INSTRUCTION AS TO INTENTION. — An instruction that the intention with which the act was done must be gathered from all the circumstances surrounding its commission does not preclude a consideration of the testimony of the defendant as to his intention to stab in self-defense, the jury being also instructed that they must consider all the evidence as to self-defense and defendant's belief of imminent danger, and judge of the testimony of the defendant fairly and considerately.

ID. — INSTRUCTIONS AS TO SELF-DEFENSE — COMMENCEMENT OF AFFRAY WITH DEADLY WEAPON. — An instruction upon the subject of self-defense, which, when construed in its entirety, gives the jury to understand that a person who arms himself with a deadly weapon for the purpose of seeking his adversary cannot *feloniously* use such weapon to take the life of his adversary, and then come into court and claim that he acted in self-defense, but that he is not deprived of the right to defend his person from a felonious assault because he began the affray, if he afterward, and before the fatal blow was struck, in good faith endeavored to withdraw from the combat, will not be held erroneous merely because an isolated part of the instruction would, if unqualified by other parts, be erroneous.

ID. — ORAL INSTRUCTIONS — AUTHENTICATION — JUDGMENT ROLL. — An unauthenticated copy of the oral instructions of the court, not approved by the judge or certified by the reporter, cannot derive verity from being inserted by the clerk in the judgment roll.

ID. — NEW TRIAL — NEWLY DISCOVERED EVIDENCE. — Newly discovered evidence which is merely cumulative is not ground for a new trial.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order refusing a new trial.

The defendant was charged with the crime of murder in killing Thomas Rosengrave at San Francisco, on the twenty-third day of October, 1887. The facts respecting the errors assigned upon this appeal are stated in the opinion of the court.

*P. Reddy*, and *W. H. Metson*, for Appellant.

The coat and vest of deceased were not admissible for the purpose of showing the wound. *People* v. *Knapp*, 71 Cal. 1, does not warrant such evidence. For the purpose of properly instructing the jury, the court had the right, and it was its duty, to determine whether there was or was not any evidence on the part of the prosecution tending to show that the crime only amounted to manslaughter, or that the defendant was justifiable or excusable. (*People* v. *King*, 27 Cal. 507; 87 Am. Dec. 95; *People* v. *Dick*, 39 Cal. 102; *People* v. *Welch*, 49 Cal. 174; *Carrol* v. *Sprague*, 59 Cal. 655.) If there was any proof on the part of the prosecution to prevent the shifting of the burden, the defendant was entitled to an instruction pertinent to that state of facts. (*People* v. *Taylor*, 36 Cal. 255; *Liskosski* v. *State*, 23 Tex. App. 165.) There being evidence on the part of the prosecution tending in some degree to show that the crime committed amounted only to manslaughter, or that defendant was justifiable or excusable, the burden of proving circumstances in mitigation, or that justify or excuse the homicide, did not devolve upon the defendant, but he was entitled to the benefit of a reasonable doubt upon these points. (Pen. Code, sec. 1105; *People* v. *Hong Ah Duck*, 61 Cal. 388; *People* v. *Knapp*, 71 Cal. 8; *People* v. *Arnold*, 15 Cal. 482; *People* v. *Flanagan*, 60 Cal. 5; 44 Am. Rep. 232; *People* v. *West*, 49 Cal. 610, 611.) The court erred in excluding the evidence of the defendant from consideration upon the question of intention. (*People* v. *Farrell*, 31 Cal. 576; *State* v. *Harrington*, 12 Nev. 135, 139; Wharton's Crim. Ev., 8th ed., sec. 431; *Thurston* v. *Cornell*, 38 N. Y. 287; *Hubbell* v. *Alden*, 4

Lans. 227, 228; *Kerrains* v. *State*, 60 N. Y. 228, 229; *State* v. *Wright*, 40 La. Ann. 589.) The court erred in instructing the jury that if the defendant brought on a quarrel, without regard to whether he did it intentionally or not, he could not have the benefit of the plea of self-defense. The jury were not authorized to find that he brought on the quarrel by merely going to where the deceased was, or opening a conversation with him,— that he had brought on the quarrel by a mere idle word. (*White* v. *State*, 24 Tex. App. 231; *People* v. *Wong Ah Teak*, 63 Cal. 544.) The newly discovered evidence is not cumulative, unless defendant's evidence makes it so. He is entitled to corroboration. (*Keenan* v. *People*, 104 Ill. 385, 395, 396; *People* v. *Stanford*, 64 Cal. 27.) It ought to produce a different result, and should not be treated as cumulative. (Hayne on New Trial, sec. 91.)

*Attorney-General Johnson*, for Respondent.

The clothing was admissible to show the wound, and to corroborate the physician who testified in the cause. (*People* v. *Knapp*, 71 Cal. 3; *People* v. *Hong Ah Duck*, 61 Cal. 391.) The court instructed the jury fully as to reasonable doubt. The charge is to be taken together as a whole. The newly discovered testimony is merely cumulative. (*State* v. *Primeaux*, 39 La. Ann. 673; *State* v. *Starnes*, 97 N. C. 423.)

The Court. — Defendant was convicted of murder in the second degree. The judgment directs imprisonment for ten years in the state prison at San Quentin.

The first point made by appellant is, that the court erred in admitting in evidence the coat worn by the deceased at the time of his death. It is said that there was no evidence to show that it was in the same condition at the trial that it was in when taken from the body of the deceased, — no evidence that there were any

cuts in the coat or vest, or that the part of the body on which the wound was inflicted was covered by the coat or vest. It has been held that clothing worn by the deceased at the time of the homicide is admissible in evidence as a part of the *res gestæ.* It is frequently important evidence, tending to prove the violence of the blow, and the course or direction of the bullet or knife. (*People* v. *Hong Ah Duck,* 61 Cal. 391; *People* v. *Knapp,* 71 Cal. 1.)

It is true, as stated by counsel for appellant, that there is nothing to show whether the coat was in the same condition as when taken from the body of the deceased, but no objection was made to the introduction of the coat in evidence upon that ground. The ground of objection was, "that the best evidence is already in, the evidence of the wound as shown by the doctor, and that is superior to any holes in the old clothes." To entitle the defendant to the benefit of the point he now makes, we think there should have been a specific objection to the clothes, on the ground that the prosecution had not shown that they were in the same condition at the trial as when they were taken from the deceased.

It is claimed that the court erred in refusing to give the following instruction: "And if you entertain a reasonable doubt, after consideration of all the evidence in the case, as to whether the defendant acted in self-defense, you should acquit the defendant."

The instruction was properly refused. The court fully and correctly instructed the jury on the question of self-defense and reasonable doubt.

The following instruction was refused: "You are instructed that if, after consideration of all evidence in the case, you have a reasonable doubt as to whether the defendant or the deceased was the aggressor, you should give the defendant the benefit of that doubt." For the same reasons in holding that the refusal to give the first instruction quoted was not error, we think there

was no error prejudicial to the defendant in refusing to give this instruction.

The court gave the following instruction: "As to the question of intention, gentlemen, you must arrive at it from all the circumstances surrounding the commission of the alleged act, which is charged to be criminal. Of course, you will understand that we cannot look into the mind and see what its workings are. We cannot bring a photograph of the human mind and exhibit it to you so as to demonstrate clearly and absolutely what the workings of such minds are. Hence, from necessity, the law says you shall gather the intention with which an act is done from all the circumstances surrounding the commission." It is contended that the jury were bound, under this instruction, to look to the circumstances alone for evidence or proof of the intent with which the act of the defendant was committed. The latter testified that he stabbed the deceased with the intention and for the purpose of preventing the deceased from stabbing him. It is said that the defendant's testimony on the question of intent being no part of the *res gestæ*, or of the "circumstances surrounding the commission of the act," therefore, under the instruction last quoted, the jury could not consider the defendant's testimony on the question of intention.

We cannot agree with counsel in his view of the effect of this instruction. The jury were instructed that, in determining whether the defendant had reasonable grounds for believing that he was in danger of losing his life or receiving great bodily harm, etc., they "should consider all these facts in connection with all the other evidence in the case in determining whether the deceased commenced the affray, and whether the defendant acted in self-defense." The court further said: "You will weigh carefully the testimony of all the witnesses in the case, and give to their testimony such credit and weight as in your consciences you believe them entitled

to." Speaking of the defendant's testimony, the jury were told not to disregard or discredit it solely because the defendant was accused of crime, but that they should judge of his testimony fairly and considerately, applying the same tests, as far as they were applicable to his testimony, that they would apply to all the other witnesses in the case.

The most serious question in the case is that which relates to the following instruction, which was given by the court: "To justify a homicide, the danger menacing the defendant must be present, or apparently so to him, and it must be imminent, or appear so to him at the time of his acting, and the killing must be done on a well-founded belief that it was necessary for the defendant to kill the deceased at the time to save himself from death or from great bodily injury. The appearance of danger to life or limb which will justify a man in taking the life of another must be an honest one, one that is well-grounded, or apparently so to him, and must arise out of a reasonable cause. A case which originates in the fault of the person himself, in a quarrel which he has provoked and brought on, in a danger which he has voluntarily brought upon himself by his own misconduct, cannot be considered reasonable or sufficient in law to support a well.grounded apprehension of imminent danger to his person, and which will support the plea of self-defense. . . . . And again, let me say to you, gentlemen, that no person when he is safe and secure from danger has a right to seek his adversary, being armed at the time with a dangerous or deadly weapon, and after seeking his adversary, then provoke a quarrel with that adversary, and during that quarrel, thus provoked or invited by himself, to feloniously use a dangerous or deadly weapon and take his life, and then come into court and claim that he acted in self-defense. The right to take human life, and justify it on the ground

of self-defense, is based upon necessity, or apparent
necessity, at the time of the killing."

It is claimed that under this instruction the defend-
ant could not have the benefit of the plea of self-defense,
however remote or trifling the fault might be, and no
matter what the intention of the defendant was at the
time the cause originated with him; that the jury were
informed, if they found the defendant guilty of any
misconduct, they should deny him the benefit of the
plea of self-defense, without regard to the degree or char-
acter of his misconduct.   If the instruction had not
been qualified by others given directly in connection
with it, we should be inclined to hold with the appellant,
but the court in the same instruction said: "And in
that connection, gentlemen, I am asked to instruct you,
and I do instruct you in the words asked, and which
you will consider, as part of the charge of the court,
binding upon you, that a party is not deprived of the
right to defend himself because he may have by words
invited the other to fight.   Such invitation does not
warrant the party challenged to make an assault with a
deadly weapon.   Neither is a party deprived of the right
to defend his person from a felonious assault because he
began the affray, if he afterward, and before the fatal
blow was struck, in good faith endeavored to withdraw
from the combat. . . . . To justify a person in killing
another in self-defense, it must appear . . . . that the
person killed was the assailant, or that the slayer had
really and in good faith endeavored to decline any fur-
ther struggle before the mortal blow was given. "

Taking the different portions of the instruction to-
gether, we think the jury must have understood the court
to say that a person who arms himself with a deadly
weapon for the purpose of seeking his adversary and pro-
voking a quarrel with him cannot *feloniously* use such
weapon to take the life of his adversary, and then come
into court and claim that he acted in self-defense.   The

jury were told in very clear terms that a party is not deprived of the right to defend his person from a felonious assault because he began the affray, if he afterward, and before the fatal blow was struck, in good faith endeavored to withdraw from the combat. We therefore cannot say that the court erred.

We have discussed the charge of the court upon the assumption that it is a part of the record herein. On the twenty-seventh day of April, 1888, there was filed in the court below a bill of exceptions, duly certified and signed by the judge, but the oral charge of the court is not incorporated into the bill. There is in the transcript a copy of what purports to be a charge to the jury, given by the judge at the trial of this case, and filed by the clerk on February 8, 1888; but it is in no way authenticated. The clerk certifies " the foregoing [including this document] to be full, true, and correct copies of the various papers of record and on file in my [his] office in the above-entitled cause, and that the same constitute the transcript on appeal " ; but the copy is not approved by the judge, and has not even the certificate of the official reporter as to its correctness. As was said in *People* v. *January*, 77 Cal. 181, " the clerk cannot give verity to what purports to be the instructions given or refused, by inserting them in the judgment roll."

It is claimed that the motion for a new trial ought to have been granted on the ground of newly discovered evidence. Waiving the objection which is made by the attorney-general, that acts of diligence in discovering what the witnesses would testify to are not shown in the transcript, we think that the newly discovered evidence is cumulative. The court below doubtless considered it to be such, and was of the opinion that the verdict of the jury would not be different if the testimony of the proposed witnesses could be had on a new trial. The principal fact stated in the affidavits on motion for a new trial is that the affiants therein saw Rosengrave

raise a knife or dagger to strike the defendant at the time of the difficulty. But the testimony of the defendant, and of the witness White, is to the same effect, and the case, so far as the defendant's theory is concerned, was put fairly before the jury upon the hypothesis that Rosengrave had, in fact, first assaulted the defendant with a knife or dagger.

Judgment and order affirmed.

PATERSON, J., dissented.

Rehearing denied.