[Crim. No. 60. Department One.—March 21, 1896.]

## THE PEOPLE, RESPONDENT, v. FRANCIS M. CONKLING, APPELLANT.

CRIMINAL LAW—HOMICIDE—EVIDENCE—COLLATERAL DISPUTE AS TO ROAD'—LEGAL RIGHTS IMMATERIAL—SELF-DEFENSE.—Upon the trial of a defendant accused of murder, which occurred in connection with a dispute between the defendant and the deceased as to the right of defendant to travel over a road crossing land leased by the deceased, evidence is admissible to show the facts leading up to the homicide, to the extent of proving that deceased was in possession of the land as lessee, and had obstructed the road leading over the land for the purpose of preventing travel thereon, and that defendant claimed the right to travel over the road, and claimed that deceased had no right to prevent him from so doing; but evidence is not admissible to show the relative legal rights of the parties to the dispute, such rights being collateral to the issue as to the killing of the deceased, which cannot be justified by proof that the defendant had the legal right to travel the road, nor could it be a justification of any attempt by deceased to kill the defendant, if defendant had no right to travel the road; and the only justification of the killing must be upon the plea of self-defense, regardless of the respective rights of the parties to the road.

ID.—DEADLY AFFRAY—BEGINNER RESPONSIBLE FOR RESULT.—If the deceased, at the time of the killing, was endeavoring at all hazards to prevent a passage through the fence with which he had obstructed the road, and the defendant was attempting to pass through the fence, and over the road at all hazards, and the parties were thereby involved in a deadly affray, the man who began the affray, and by some overt act caused the other, as a reasonable man, to believe that he was in great danger of loss of life or limb, thereby places himself without the protection of the law, and must bear the consequences, whether of death upon the ground, or of penalty for murder.

ID. — EVIDENCE — CLOTHING OF DECEASED — CONDITION — INSUFFICIENT OBJECTION.—Where the clothing worn by the deceased at the time of

the killing was introduced in evidence, a mere general and indefinite objection that the proper predicate had not been laid for its introduction, is insufficient, and does not include the specific objection that the clothes when offered in evidence were not shown to be in the same condition as when taken from the body.

ID.—IMPEACHMENT BY DEFENDANT OF HIS OWN WITNESS—LOCATION OF STONE NEAR BODY OF DECEASED — HEARSAY.—The defendant cannot impeach a witness called by himself, 🐝 proof of contradictory statements made by him, unless the testimony of the witness is prejudicial to his case; and where a witness for the defendant testified that he saw a rock about the size of a goose egg within three feet from the left hand of the deceased when his body was found, it is not error for the court to refuse to permit him to be impeached by proof that he had stated to others that deceased had a rock in his left hand, the only effect of a successful impeachment being to eliminate the rock from the case, to the prejudice rather than to the benefit of the defendant; and hearsay evidence is not admissible to prove as a fact a different location of the stone from that testified to by the witness.

ID.—INAPPLICABLE INSTRUCTION—DEFENDANT AS FIRST ASSAILANT—NECESSITY OCCASIONED BY FAULT. — Where there is no evidence in the case that the defendant was the first assailant, and withdrew, or attempted in good faith to withdraw, from the affray before he fired the fatal shot, and defendant's testimony is to the contrary, an instruction that a real or apparent necessity brought about by the design, contrivance or fault of the defendant, cannot be availed of as a defense for the commission of a homicide, is without the facts, and not pertinent to the issues, and should not be given.

ID. — MISLEADING INSTRUCTION — ATTEMPT TO TRAVEL OVER DISPUTED ROAD.—An instruction as to the unavailability of self-defense, where the real or apparent necessity for killing was voluntarily brought upon the defendant by his own fault or misconduct, is erroneous and misleading, where it is so broad in its terms as to justify the jury in believing that it was such fault or misconduct upon the part of the defendant to attempt to travel over the disputed road under the circumstances appearing in proof, as to deprive the defendant of the right of self-defense if attacked by the deceased at the point where the road was obstructed.

ID. — ASSAILANT DOES NOT FORFEIT LIFE — RIGHT TO FLEE — PURSUIT, WHEN IMPROPER. —An assailant beginning an affray does not absolutely forfeit to the party assaulted his right to live, and where a person has been feloniously assailed, and the felon has desisted from his attempt, and taken to flight, the right to pursue for the purpose of private defense ceases as soon as, in the reasonable belief of the assailed, the danger has ceased to be immediate and impending.

ID.—MISCONDUCT OF JURORS—CLOTHING WITHOUT POWDER MARKS—EXPERIMENTS OUT OF COURT—NEW TRIAL.—Where the clothing of the deceased offered in evidence showed no powder marks, a new trial should be granted for misconduct of jurors in investigating the case out of the courtroom, where it appears by uncontradicted affidavits that two of the jurors experimented with a rifle out of court for the purpose of ascertaining at what distance powder marks upon clothing would be carried by the firing of the rifle.

APPEAL from a judgment of the Superior Court of San Benito County and from an order denying a new trial. N. A. DORN, Judge.

The facts are stated in the opinion of the court.

*S. F. Geil,* and *G. B. Montgomery,* for Appellant.

The ownership of the land was not material, and the admission of evidence thereof was injurious to defendant. (Wharton's Criminal Law, 8th ed., secs. 462, 500; Wharton's Criminal Evidence, 2d ed., sec. 414; 9 Am. & Eng. Ency. of Law, 606; *People* v. *Honshell,* 10 Cal. 83; 70 Am. Dec. 698; *Noles* v. *State,* 26 Ala. 31; 62 Am. Dec. 711; *Harrison* v. *State,* 24 Ala. 67; 60 Am. Dec. 450; *State* v. *Moore,* 31 Conn. 479; 83 Am. Dec. 159; *People* v. *Thompson,* 92 Cal. 506–08; Code Civ. Proc., sec. 1875, subd. 5; *People* v. *Smith,* 93 Cal. 445; *Blakely* v. *Blakely,* 89 Cal. 325; *People* v. *Furtardo,* 57 Cal. 345; *Leonard* v. *Kingsley,* 50 Cal. 628; *Coleman* v. *People,* 58 N. Y. 555; Rice on Criminal Evidence, sec. 39; *People* v. *Costello,* 15 Cal. 350–53; *State* v. *Zellers,* 7 N. J. L. 230.) The predicate for the admission in evidence of the vest and two shirts worn by the deceased at the time of the killing was totally insufficient. (Wharton's Criminal Evidence, 2d ed., sec. 767; *People* v. *O'Brien,* 78 Cal. 41–4; *People* v. *Hawes,* 98 Cal. 648–52; *People* v. *Fernandez,* 35 N. Y. 49–64.) The misconduct of the jury will be presumed to be injurious to defendant, unless the contrary affirmatively appears. (Hayne on New Trial and Appeals, secs. 26, 67; *People* v. *Turner,* 39 Cal. 370; *People* v. *Lee Chuck,* 78 Cal. 338; *People* v. *Brannigan,* 21 Cal. 337; *Jackson* v. *Feather River Water Co.,* 14 Cal. 19; *Hare* v. *State,* 4 How. (Miss.) 193; *People* v. *Williams,* 24 Cal. 39; *Brown* v. *La Crosse etc. Co.,* 21 Wis. 51; *State* v. *Vogel,* 22 Wis. 471; *State* v. *Tuller,* 34 Conn. 280; Hill on New Trials, 83, 87; *Wright* v. *Illinois etc. Tel. Co.,* 20 Iowa, 195; *Crawford* v. *State,* 2 Yerg. 60; 24 Am. Dec. 467; *Booby* v. *State,* 4 Yerg. 111; *Ellidge* v. *Todd,* 1 Humph. 43; 34 Am. Dec. 616; *Fuller* v. *Chicago etc.*

R. R. Co., 31 Iowa, 211; Cowles v. Chicago etc. R. R. Co., 32 Iowa, 515; Garretty v. Brazell, 34 Iowa, 104; Perry v. Bailey, 12 Kan. 539; State v. Clark, 34 Kan. 289.)

W. F. Fitzgerald, Attorney General, C. N. Post, Deputy Attorney General, M. T. Dooling, District Attorney, and Briggs & Hudner, for Respondent.

Evidence of lawful possession of the land by the deceased was properly admitted. (People v. Stone, 82 Cal. 36; White v. Territory, 19 Pac. Rep. 37; Hoag v. Pierce, 28 Cal. 187; People v. Payne, 8 Cal. 344; People v. Thompson, 92 Cal. 506; Rogers v. Cody, 104 Cal. 290; 43 Am. St. Rep. 100; People v. Honshell, 10 Cal. 83; 70 Am. Dec. 698; Whittaker v. Pendola, 78 Cal. 296; Kitts v. Austin, 83 Cal. 167; Code Civ. Proc., sec. 1925; Wormouth v. Gardner, 105 Cal. 149.)   The objection to the admission in evidence of the clothes of deceased should have been specific. (People v. O'Brien, 78 Cal. 41.)   The court did not err in sustaining the objection to the question asked of witness Virgil Conkling. (People v. Jacobs, 49 Cal. 384; People v. Mitchell, 94 Cal. 556.)   The right of self-defense, which justifies a homicide, does not include the right of attack. (People v. Westlake, 62 Cal. 303.)   The evidence offered by appellant did not establish misconduct on the part of the jury. (People v. Tarm Poi, 86 Cal. 231; People v. Williams, 24 Cal. 38; People v. Azoff, 105 Cal. 632.)   The court did not err in giving the instruction complained of. (People v. Westlake, supra, and cases cited; People v. O'Brien, supra; People v. Bagnell, 31 Cal. 409.)

GAROUTTE, J.—The appellant has been convicted of murder in the first degree, and sentenced to imprisonment for life.   He made a motion for a new trial, which was denied, and now appeals from the judgment and order denying such motion.

Deceased was in the possession of a certain tract of land as a renter.   A road passed over this land which defendant and residents of the neighborhood were

accustomed to travel going to and from the postoffice and trading station. Deceased placed a fence across this road for the purpose of stopping travel thereon. Upon a certain Friday defendant met the deceased, his brother and the owner of the land, at the point of obstruction, and, after heated language, threats, etc., passing between the parties, the defendant was prevented from continuing his journey, and was forced to retrace his steps. A day or two later he bought a rifle, and within a day or two thereafter, not in the presence of deceased, he went and tore down the fence erected across the road. Subsequently, and with but a day or two intervening, he passed over the road and across the deceased's land, presumably unobserved, upon his way to the postoffice. In the afternoon, upon his homeward journey, he approached the point where the road had been obstructed by the fence, having his rifle with him in his buggy; deceased being at the point of obstruction, trouble arose between them, and defendant shot and killed the deceased. There were no eyewitnesses to the tragedy other than defendant and the dead man.

There was considerable evidence introduced at the trial as to the ownership of the land over which this road passed, and as to the rights of deceased to the road under his lease. Counsel for defendant attempted to show that the road was a valid, legal road by user and prescription, but this evidence was not admitted. It is possible that the jury, by reason of the evidence that was placed before them upon these questions, were confused to some degree in arriving at a determination as to the exact bearing this class of evidence had upon the merits of the case. But a new trial must be ordered for other reasons, and it becomes unnecessary to look at these matters in detail. Upon a second trial of the case we think it very proper for the court to keep within narrow limits any investigation as to the title to the land, or the *status* of this road. These questions are purely collateral to the issue on trial, and the jurors' minds should not be led away from the main question

under investigation.  For a clear understanding of the evidence bearing upon the homicide the jury should have been enlightened upon these collateral questions to the extent of showing generally that deceased was in possession of the land as a lessee, that he obstructed the road leading over the land for the purpose of preventing travel thereon, and that defendant claimed that the road was such a road as that he had a right to travel over it, and the deceased had no right to prevent him from so doing.  This was far enough for the evidence to go in this direction.  It showed the facts leading up to the homicide, and all that was necessary for the jury to know in order to fully comprehend the case in its important essentials.  There is no question of defense of property or habitation here which would justify the deceased in killing the defendant; nor any question of deceased's preventing defendant from exercising a right which would in law justify defendant in killing the deceased.  Conceding defendant had the legal right to travel the road, he was not justified in killing deceased in order that he might exercise that right; and, conceding defendant had no right to travel the road, deceased was not justified in killing him to prevent him from traveling it.  Defendant admitted the killing and justified upon the plea of self-defense, and that was the question in the case.  The relative legal rights of the parties as to the road were not an issue before the jury, for they shed no light upon the solution of the question as to what actually occurred at the immediate time of the killing.

If it be assumed that at the time of the killing deceased was at the opening in the fence for the purpose of preventing the defendant at all hazards from going through, and if it also be assumed that defendant was there intending to pass through at all hazards, still the question of self-defense is presented to the jury, regardless of the respective rights of the parties to the road. Under such circumstances, the man who began the deadly affray—that is, who by some overt act caused

the other, as a reasonable man, to believe that he was in great danger of loss of life or limb—placed himself without the protection of the law, and must take the consequences, whether those consequences be his death upon the ground, or the penalty imposed after trial by judge and jury.

During the course of the trial the prosecution offered in evidence a vest and two shirts which were worn by deceased at the time he was killed. The defendant objected to this evidence on the ground that the proper *predicate* had not been laid for its introduction. At that time evidence had been introduced showing these garments to have been those worn by the deceased at the time he was killed, and under such circumstances we consider the objection of the defendant anything but plain and explicit. Counsel now insist that the objection went to the point that the clothes, when offered in evidence, were not shown to be in the same condition as when taken from the body. It was but fair to the court and to the people that this objection should have been framed in more direct and explicit language. It was too indefinite to give the court any information as to the point now raised by counsel. While it is the rule that evidence of this character, in order to justify its admission before the jury, should be shown to be in the same condition when offered as when taken from the body, especially as to the particular point toward which the evidence is directed, yet this objection was too broad and general and vague to justify a review here of the ruling made by the trial court. Upon first thought, the conclusion would be arrived at that the objection went to a failure of the identification of the clothing, but it seems that such was not its purpose; and indeed, upon an examination of the lexicographers, the word "predicate" would seem to be of doubtful application, even when used in that sense. A similar question was presented to this court in *People* v. *O'Brien*, 78 Cal. 44, and it was held that the objection to the evidence offered

was so broad that the court's ruling would not be considered.

Howard Hardwick, a younger brother of deceased, was first at the scene of the homicide. He was called as a witness by the defense, and testified that when he viewed the body he observed a rock about the size of a goose egg three feet from deceased's left hand. Defendant's counsel then asked him:

"Q. Did you, on the 1st of March, 1895, at your father's house, tell Virgil Conkling and Mrs. German that the deceased had a rock in his left hand, and that a hatchet was right close to his right hand, or near his body? A. No, sir; I never told him that. I might have told them the hatchet was there.

"Q. Did you ever tell them that a rock was in either hand of the deceased? A. No, sir."

Virgil Conkling was then called and asked:

"Q. Did Howard Hardwick at that time inform you and your mother that the deceased had a rock in his left hand, and that the hatchet was near his right hand?"

An objection was sustained to this question. The evidence of Conkling, if admissible at all, was admissible for the single purpose of impeaching the witness Hardwick by showing his contradictory statements, as allowed by sections 2049 and 2052 of the Code of Civil Procedure. It was clearly not admissible as proving a fact, for it was hearsay of the plainest character. As far as the question pertained to the hatchet, the objection was properly sustained, for Hardwick himself testified that he might have told Virgil Conkling that the hatchet was there. Hence there was nothing to contradict in this regard, and Conkling's evidence as to that point was clearly objectionable. But let us see as to the rock. Hardwick testified that he found the rock three feet from deceased's left hand. It was then proposed to impeach him by showing that he told Conkling it was in his left hand. The question now presents itself, Why should Conkling's evidence have been ad-

mitted? How could it have legally served the interests of the defendant offering it? As we have seen, it was clearly improper for the purpose of proving as a fact that the dead man held a rock in his left hand, and if admitted to impeach Hardwick as to the fact that a rock was lying three feet from his left hand, then, Hardwick being impeached, the rock is removed from the case, and the defendant has been injured by impeaching his own witness, rather than benefited. For, as far as his interests were concerned, it was better to have a rock within three feet of the hand of the dead man than to have had no rock there at all. In other words, the proposition simply comes to this: The evidence of Hardwick as to the rock was not prejudicial to defendant's case, and it is only where the evidence produced by counsel results in injury to his own cause that the aforesaid sections of the code as to the impeachment of a witness by contradictory statements may be invoked. (See *People* v. *Mitchell*, 94 Cal. 556; *People* v. *Jacobs*, 49 Cal. 384.)

The court instructed the jury upon the law of the case, as follows: "The law provides a remedy for a person unlawfully obstructed in the use of his property, or unlawfully prevented from the free enjoyment thereof; and does not justify such person in assaulting or killing the one so obstructing its use or preventing its enjoyment, for that reason alone. And, if you believe from the evidence beyond a reasonable doubt, that the defendant killed the deceased, then, to render such killing justifiable, it must appear that the defendant was wholly without any fault imputable to him by law in bringing about the commencement of the difficulty in which the mortal wound was given; and while it is true that an honest apprehension of danger to life or limb may justify a man for taking the life of another, yet that apprehension must arise out of a reasonable cause; but a cause which originates in the fault of the person himself, in a quarrel which he has provoked, or in a danger which he has voluntarily brought upon himself by his

own misconduct, cannot be considered reasonable or sufficient in law to support a well-grounded apprehension of imminent danger to his person. Error of apprehension the law overlooks when a man is called upon to act on appearances, but it does not overlook dishonesty of apprehension. Hence, a real or apparent necessity, brought about by the design, contrivance, or fault of the defendant, cannot be availed of as a defense for the commission of a crime or a homicide."

This instruction was a trespass upon the rights of the defendant as not containing a sound exposition of the law. There was no evidence in the case that the defendant was the first assailant, and then withdrew, or attempted in good faith to withdraw from the affray before he fired the fatal shot. In fact defendant's own testimony is to the contrary. For this reason the instruction, regardless of the soundness of the law covered by it, would seem to be without the facts, and not pertinent to the issues under investigation; and upon a second trial of this case, the evidence being the same, we think the court could well refuse an application for the giving of the principle. But here we cannot say that no injury resulted to defendant from this charge, for it is broad in its language and covers much ground. It says in effect that, if the necessity for the killing arose by the fault of defendant, then the killing was not done in self-defense; and, again, it says if the danger which surrounded defendant was one brought upon himself by his own misconduct he cannot defend himself against it. Aside from any question as to the immediate cause which at the time of the killing precipitated the affray, this language of the instruction is broad enough to justify the jury in believing that it was such a fault or misconduct upon the part of the defendant, in attempting to travel this road under existing circumstances, as to deprive him of the right of self-defense if attacked by deceased at the point where the road was obstructed. Such, certainly, is not the law,

and neither court nor counsel for the people would so contend.

Taking the instruction as a whole, the principle there declared has some support in the law, and authority may be found for it in a few of the earlier decisions of this court. But the great weight of authority looks the other way, and section 197 of the Penal Code declares a contrary doctrine. This rigid doctrine, broadly stated by Sergeant Hawkins, is: "No man shall justify the killing of another by pretense of necessity, unless he were himself wholly without fault in bringing that necessity upon himself." (1 Hawkins' Pleas of the Crown, 82, 83.) The same principle is thus stated in another form: "Neither does it lie in the mouth of a party first making a felonious attack upon another, without any lawful provocation, to urge, even in alleviation, this plea of necessity in self-defense, though perhaps it existed in fact." (East's Pleas of the Crown.) But such law is directly opposed by Lord Hale in his Pleas of the Crown, pages 479, 480, and is also contrary to the whole weight of modern authority. (See Stoffer v. State, 15 Ohio St. 47; 86 Am. Dec. 470.)

By the extreme doctrine we have cited, and which is followed in the instruction of the judge in this case, the party first at fault—the one beginning the affray—absolutely forfeits to the other his right to live, to the extent at least of the difficulty which he has created. Having committed the first wrongful act, the plea of self-defense is foreclosed to him, and his life is the penalty, no matter what turn the affray may subsequently take. This doctrine would seem to be utterly inconsistent with the whole theory of self-defense, and gives a party assailed the absolute right to avenge his own wrongs. It authorizes the party first assailed to kill his adversary when he is in no danger, and to defend himself when no defense is necessary. Killing under such circumstances is not done in self-defense, for the necessity to kill is not present, but it is simply wreaking vengeance in satisfaction of a prior wrong; and in law the commis-

sion of one crime can never justify the commission of another. The true principle is well stated in Horrigan and Thompson's Cases of Self-defense, page 233: "We are thus brought to the conclusion that where a person has been feloniously assailed, and the felon has desisted from his attempt and taken to flight, the right to pursue for the purpose of private defense ceases, as soon as, in the reasonable belief of the assailed, the danger has ceased to be immediate and impending." In the consideration of this question, this court, in a few early cases, has wandered from the true path, to wit: *People* v. *Lamb*, 17 Cal. 323, *People* v. *Travis*, 56 Cal. 254, and *People* v. *Westlake*, 62 Cal. 306. It will be observed that the doctrine as declared in *People* v. *Westlake, supra,* failed to receive the sanction of a majority of the court. As stating the true rule we cite: *People* v. *Simons*, 60 Cal. 72; *People* v. *Wong Ah Teak*, 63 Cal. 544; *People* v. *Bush*, 65 Cal. 129; *People* v. *Gonzales*, 71 Cal. 569. And as discussing the entire question, we refer to *People* v. *Button*, 106 Cal. 628; 46 Am. St. Rep. 259. (See, also, *People* v. *Hecker*, 109 Cal. 451.)

The distance between the deceased and defendant at the time the fatal shot was fired was a vital issue in the case. The clothing worn by the deceased was in evidence, and when exhibited to the jury showed no powder marks. When the defendant's motion for a new trial came before the court he offered the affidavits of certain parties to the effect that during the progress of the trial two of the jurors borrowed a rifle similar to that with which the deceased was killed, bought some cotton drilling, retired to the outskirts of the city, and there made experiments by firing the rifle, for the purpose of determining at what distance powder marks would be carried by the fire. The evidence upon this question disclosed by the affidavits is circumstantial, but we think amply sufficient to establish the fact that these things were done by the two jurors. Especially is this so when we pause to consider that those jurors have not denied the fact by counter-affidavits. They

were evidently honest, and desirous of getting at the truth of the matter; but they were too zealous, and their misconduct in this particular demands a retrial of the case. Jurors cannot be permitted to investigate the case outside the courtroom. They must decide the guilt or the innocence of the defendant upon the evi. dence introduced at the trial. It is impossible for this court to say that this outside investigation did not affect the result as to the character of the verdict rendered. For, when misconduct of jurors is shown, it is presumed to be injurious to defendant, unless the contrary appears. (*People* v. *Stokes*, 103 Cal. 193; 42 Am. St. Rep. 102.)

We find nothing further in the record demanding our consideration.

For the foregoing reasons the judgment and order are reversed, and the cause remanded for a new trial.

VAN FLEET, J., and HARRISON, J., concurred.