Filed 3/22/21  P. v. Self CA3

NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C088234 |
| v. | (Super. Ct. No. 16FE010737) |
| THOMAS CHRISTOPHER SELF, | |
| Defendant and Appellant. | |

Defendant Thomas Christopher Self, a massage therapist, was convicted on 12 counts for sex offenses committed against two clients and an extern. Sentenced to an aggregate term of 11 years, defendant now contends the trial court erred and abused its discretion when it discharged a juror for misconduct during deliberations. Finding no error or abuse of discretion, we will affirm the judgment.

BACKGROUND

Each of the crimes occurred while defendant was performing a massage on the victim.

R., a female repeat customer of defendant, went to him for a massage, explaining she had trouble in her foot arches. Defendant directed R. to pull down her shorts. After she did so, he massaged R.'s buttocks and inserted his finger in her anus. With his finger

1

still in her anus, defendant reached around R.'s body with his other hand, past her pubic hair, and he touched her groin area within two centimeters of her labia.

B. sought a massage from defendant for pain in her knee. Defendant massaged the back of B.'s legs to within less than an inch of her genital area. Defendant directed B. to move around, and when she did, defendant's finger went into her vagina. Defendant asked B. to get on her hands and knees on the table. After she complied, defendant massaged around her vagina and anus and inserted his finger in her anus.

T., while going to school to be a massage therapist, externed in defendant's practice. On the first day of T.'s externship, defendant took off his clothes and had T. give him a massage. On the second day of her externship, defendant and T. went into a massage room, and defendant locked the door. Defendant asked T. to take off her pants, which she did, and he gave her a massage. During the massage, defendant put his hands under T.'s underwear and told her to move around while he moved his fingers in a circular motion between the labia and inner thigh and touched her clitoris. It felt sexual to T.

A jury convicted defendant on 12 counts for sex offenses involving the touching or penetrating of the intimate parts of the two clients and the extern. (Pen. Code, §§ 243.4, subds. (c) & (e)(1); 289, subd. (d)(4).)[1] The trial court sentenced defendant to an aggregate term of 11 years in prison.

The specific background pertaining to the contention on appeal is set forth in the discussion.

## DISCUSSION

Defendant contends the trial court erred and abused its discretion when it discharged a juror for misconduct during deliberations.

---

[1] Undesignated statutory references are to the Penal Code.

## A

The jury sent a note to the trial court during deliberations, asking if the jury could "go forward" if the jury believed one of the jurors was biased or conducted an experiment in violation of the trial court's instructions. Upon receiving the note, the trial court began an investigation into possible jury misconduct. The trial court began by questioning the foreperson, Juror No. 8, outside the presence of the other jurors. Asked to explain the jury's note, Juror No. 8 said Juror No. 10 was knowledgeable about anatomy, based on her profession. Juror No. 10 told the jury that she had gone home and conducted an experiment by touching her front area. Other jurors interrupted her and said they did not want to hear about it because it was an experiment. Juror No. 10 responded: "I was just experimenting in terms of where the body parts are." She did not relate to the other jurors the results of her experiment. Juror No. 8 added that the jurors were concerned that Juror No. 10 was biased because of the juror's professional experience.

The trial court next interviewed Juror No. 10 outside the presence of the other jurors. The trial court asked Juror No. 10 what she did that led to the jury sending the note to the trial court. Juror No. 10 responded: "So I don't feel like I did conduct an experiment, and I don't feel like I used that word in describing to the jury what my thoughts were. [¶] Um, I did report when we were talking about doubts that I did have what I felt was a reasonable doubt, and I attempted to explain why. [¶] And um, one -- one point had to do with whether I felt it was possible --." The trial court cut off Juror No. 10's response and said it just wanted "to know what experiment you conducted." Juror No. 10 reiterated that she did not believe she conducted an experiment. The trial court said it did not want to know Juror No. 10's thought processes, it wanted to know what Juror No. 10 "did that you communicated to the other jurors." When Juror No. 10 again began to relate her reasoning, the trial court redirected her and finally asked, "Did you touch yourself in some of the subject areas that have been discussed in the trial?" Juror No. 10 said: "No. [¶] I made a motion as I described to the jury my doubt toward

3

my groin area. [¶] One of the jurors said to me stop. I believe you've conducted an experiment." The trial court again asked Juror No. 10 whether she had touched those parts of her body, Juror No. 10 replied, "I don't believe that I did. I feel like I reflected and wondered and said -- just attempted to describe to the jury what my doubt was."

The trial court asked Juror No. 10 whether she had expressed an opinion based on what may have been her professional knowledge. Juror No. 10 said, "Yes. Yes. [¶] As a hypothetical, in explaining something, I did say that in my profession or a health profession -- [¶] In fact, another juror chimed in and said as in the case maybe of a gynecologist, and um -- but it was hypothetical." Juror No. 10 had told the other jurors "it is possible to do things for a professional reason and not a sexual intent . . . ."

After Juror No. 10 left the courtroom, the trial court told counsel that it intended to question the remaining jurors about whether Juror No. 10 conducted an experiment and whether Juror No. 10 referred to personal experiences to influence the other jurors. The defense objected to the procedure. Starting with Juror No. 1, the trial court questioned each juror outside the presence of the other jurors. While the trial court's questions did not specifically identify Juror No. 10, it can be inferred, based on the totality of the record, that the jurors' responses were about Juror No. 10. Accordingly, we will refer expressly to Juror No. 10 in recounting the trial court's interviews with the other jurors.

Juror No. 1 said Juror No. 10 described to the jury that she had touched herself the night before, but the jurors did not allow Juror No. 10 to relate the conclusions she drew from doing so. Also, Juror No. 10 did not "explicitly" express an opinion, but some of the jurors thought her doubts were based on her profession.

Juror No. 2 said Juror No. 10 told the jury, while gesturing to her body, about conduct she engaged in outside of court. Juror No. 10 also related to the jury her opinions based on her professional experience.

4

Juror No. 3 related that Juror No. 10 told the jury about conduct she engaged in outside of court, but Juror No. 10 did not relate the results of the conduct. Juror No. 10 also expressed her professional knowledge and expertise and said how she would feel if she were in defendant's situation.

Juror No. 4 said Juror No. 10 told the jury about conduct she engaged in outside of court. Juror No. 10 started to describe the conduct but was stopped by another juror. Juror No. 10 did not describe what the results of the conduct were. Juror No. 10 also discussed her professional or special knowledge during deliberations. Again, she was stopped when she started this discussion. In addition, Juror No. 10 expressed her opinion about how she would feel if she were in defendant's situation.

Juror No. 5 began to recite Juror No. 10's description of the experiment "they" had done the night before; but then Juror No. 5 clarified that Juror No. 10 had described an experiment on herself, with Juror No. 10's spouse present. According to Juror No. 5, Juror No. 10 discussed her professional knowledge or experience with respect to the evidence, and the other jurors also discussed Juror No. 10's professional knowledge. In addition, Juror No. 10 expressed her opinion about how she would want things to be if she were a party in the trial.

During a break in questioning the jurors, defense counsel reiterated his objection to the procedure.

Juror No. 6 said Juror No. 10 described what she did to herself outside of court, but Juror No. 6 stopped Juror No. 10 from going into the details. Specifically, Juror No. 6 said Juror No. 10 stated, "[L]ast night I went home and I did an experiment." In making the statement, Juror No. 10 started to move her right hand toward her groin area. Juror No. 10 also discussed her professional or specialized knowledge, saying she was a physical therapist. And Juror No. 10 formed her opinion about the case based on her professional experience and told the other jurors "how [she] would want it to be" if she

were one of the participants in the trial. Juror No. 6 encouraged the jury to bring Juror No. 10's conduct to the attention of the trial court.

Juror No. 7 said Juror No. 10 told the jury about having done experiments on herself the night before, like doing a massage on herself, but she did not share with the other jurors the results of her experiments. The experiments were "connected to [Juror No. 10's] profession."

Juror No. 9 related that Juror No. 10 told the other jurors she had tried to conduct an experiment, but the other jurors would not let her explain it further.[2] Juror No. 10 also used her professional or specialized experience or knowledge in evaluating the evidence. That professional knowledge was raised "[t]hroughout the whole deliberation process." And Juror No. 10 expressed an opinion about putting herself in the shoes of one of the participants in the trial.

Juror No. 11 said Juror No. 10 told the other jurors she had tried something at home and moved her hand down, but she was cut off. According to Juror No. 11, Juror No. 10 also said "she could have been in the same situation because of her profession. She can put herself in that place." Juror No. 10 also drew upon her experience with clients.

Juror No. 12 said Juror No. 10 "began to say last night I conducted an experiment and started to demonstrate with her hands, and another juror -- two jurors said, don't, don't, you're not supposed to do that, and we didn't go any further with that." The other jurors told Juror No. 10 they thought she had a bias and could not get past it. Juror No. 12 added that Juror No. 10 "is a physical therapist and has some concerns from a

---

[2] Although the record indicates this questioning was of Juror No. 8, Juror No. 8 was the foreperson and was questioned both at the beginning and the end of the trial court's investigation. The record does not reflect questioning of Juror No. 9, even though all other jurors were questioned. It is apparent that this questioning was of Juror No. 9.

professional aspect, of being a professional, a physical therapist." Juror No. 10 did not discuss her professional experience or knowledge, but Juror No. 12 thought Juror No. 10's experience, from a professional and ethical standpoint, was making it difficult for Juror No. 10 to evaluate the evidence without bias. Juror No. 12 said Juror No. 10 "wants to give more professional weight to certain things rather than perhaps the average, prudent person's weight to things because of her profession involved." Juror No. 12 did not remember any jurors putting themselves in the place of any of the trial participants.

The trial court again questioned Juror No. 8, the foreperson. Juror No. 8 related that Juror No. 10 said, "that night she was -- when she was at home, that she put her hand down in that area, and she kind of gestured a little bit, um, and I don't know if there was interruption at that point in terms of that's an experiment, don't want to hear about it. [¶] She said well, I wasn't doing an experiment. You know, I just wanted to get an understanding in terms of that area." Also, "[i]n regards to her profession, she indicated that she's a professional, and that, um, being kept up by those standards, that she would not do anything along those lines in relationship to the case." Concerning Juror No. 10's professional experience, "[s]he said she was open, but she did indicate she had her standards."

Over the defense's objection, the trial court discharged Juror No. 10. The trial court found Juror No. 10 had not been truthful when she said nothing had happened the night before. The trial court also found Juror No. 10 conducted a prohibited experiment outside of court and inserted her professional knowledge and experience into the evidence and deliberations. The trial court said that when a juror expresses a bias in favor of one side, it is incumbent on the trial court to remove the juror. Responding to the defense's argument that discharging Juror No. 10 was just a way of getting rid of a lone, hold-out juror, the trial court said that was "pure speculation . . . . We have no way of knowing."

7

B

The trial court may discharge a juror for good cause. (§ 1089; Code Civ. Proc., § 233, 234.) What constitutes "good cause" lies within the discretion of the trial court. (*People v. Price* (1991) 1 Cal.4th 324, 400.) We will uphold the trial court's discharge of a juror if the record supports the disqualification as a demonstrable reality. (*People v. Williams* (2015) 61 Cal.4th 1244, 1262.) If there is any substantial evidence supporting the trial court's exercise of discretion, we must uphold the removal of the juror. (*People v. Farris* (1977) 66 Cal.App.3d 376, 386.)

"Once a trial court is put on notice that good cause to discharge a juror may exist, it is the court's duty 'to make whatever inquiry is reasonably necessary' to determine whether the juror should be discharged. [Citation.]" (*People v. Espinoza* (1992) 3 Cal.4th 806, 821.) "Such an inquiry is central to maintaining the integrity of the jury system, and therefore is central to the criminal defendant's right to a fair trial." (*People v. Kaurish* (1990) 52 Cal.3d 648, 694.)

Jurors are forbidden to do their own investigation outside the courtroom. (*People v. Conkling* (1896) 111 Cal. 616, 628 (*Conkling*).) The jurors were so instructed in this case. (CALCRIM No. 201.) Although jurors may engage in experiments which amount to no more than a careful examination of the evidence presented in court (*People v. Cooper* (1979) 95 Cal.App.3d 844, 853-854), what Juror No. 10 described to the other jurors was more than a careful examination of the evidence. According to the other jurors, Juror No. 10 said she went home and explored the areas of her own body. Because Juror No. 10's body was not in evidence and because Juror No. 10's touching of her own body was not from the same angle and body positions as would be the touching by a massage therapist, this conduct introduced new evidence into Juror No. 10's deliberations.

This case is similar to *People v. Castro* (1986) 184 Cal.App.3d 849 (*Castro*), in which a juror went home and used binoculars to test the veracity of what an officer

8

testified to seeing through binoculars. The Court of Appeal concluded it was an impermissible experiment because it amounted to receipt of out-of-court evidence. (*Id.* at pp. 853-854.)

Defendant claims the California Supreme Court's decision in *People v. Collins* (2010) 49 Cal.4th 175, 235-256 (*Collins*) supports his argument that what Juror No. 10 did was not misconduct. We disagree.

In *Collins*, a juror went home and, using the testimony from trial, created on a computer a diagram of the trajectory of the bullet, consistent with the coroner's report. The juror said that he " 'worked out height patterns and came up with the fact that anyone standing six feet away from another person would have to just about be standing on a stool two and a half feet high to get a downward trajectory through the back of the skull of an individual . . . .' " The juror determined that the shooting either had to be execution style or, with the victim standing and the shooter six feet away, the shooter had to be standing on a stool. The next day, the juror walked the jury through a demonstration supporting his conclusions. (*Collins, supra,* 49 Cal.4th at pp. 237-239.) The California Supreme Court held this was not juror misconduct because the juror's "individual contemplation of the evidence" and the jury-room demonstration did not introduce extrinsic evidence into the deliberations. (*Id.* at p. 256.) The juror used his computer only to "diagram the positions of defendant and [the victim] in order to visualize how [the victim] suffered his particular wound." (*Id.* at p. 252.) Consequently, the "use of his computer was simply his own permissible thinking about the evidence received, and was not an experiment resulting in the acquisition of any new facts." (*Ibid*.)

The difference between the actions of the juror in *Collins* and the actions of Juror No. 10 in this case is that, while the juror in *Collins* made a diagram based on the evidence and shared a demonstration with the rest of the jury, Juror No. 10 apparently performed the experiment by manipulating her own body, which was necessarily unlike the position of a massage therapist manipulating a client's body. The experiment

9

therefore was not based on the trial evidence but instead was based on Juror No. 10's observations of manipulating her own body. This experiment is similar to the juror misconduct condemned in *Conkling*, a case in which the jurors tried to determine whether firing a juror's own rifle through fabric at certain distances would or would not produce powder marks on the fabric. (*Conkling, supra,* 111 Cal. at pp. 627-628; see also *Castro, supra,* 184 Cal.App.3d. at pp. 853-854.)

Even though the other jurors did not allow Juror No. 10 to reveal the results of her experiment, the out-of-court experiment tainted Juror No. 10's own deliberations by introducing extrinsic evidence into her own deliberations. (*Castro, supra,* 184 Cal.App.3d at p. 853.) Thus, the trial court did not err or abuse its discretion by discharging Juror No. 10. The trial court's investigation revealed a demonstrable reality that Juror No. 10 conducted an impermissible experiment outside of court. Although this was a sufficient basis for the trial court's discharge of Juror No. 10, we will nevertheless address additional arguments asserted by defendant.

C

Defendant argues it was not bias for Juror No. 10 to express reasonable doubt based on her training and expertise. Although defendant seeks to recast the issue in this way, suggesting the trial court removed the juror for having a reasonable doubt, we do not adopt defendant's characterization.

The trial court may inquire into the conduct of jurors to determine whether there was misconduct, even though the trial court may not inquire into the effect of the conduct on the deliberations. (*People v. Steele* (2002) 27 Cal.4th 1230, 1265.) Jurors may use their own knowledge and experience to inform their own decisions, but they must not express opinions during deliberations based on their professional knowledge or expertise. (*Ibid*.)

The trial court asked Juror No. 10 whether she had expressed opinions during deliberations based on her professional knowledge. Juror No. 10 said she had and

10

continued: "As a hypothetical, in explaining something, I did say that in my profession or a health profession -- [¶] In fact, another juror chimed in and said as in the case maybe of a gynecologist, and um -- but it was hypothetical." The trial court asked whether Juror No. 10 had discussed how things are done in her profession. She responded: "I have said that it is possible to do things for a professional reason and not a sexual intent, yes." Other jurors attested that Juror No. 10 referenced her own professional experience and knowledge during deliberations.

The trial court did not err or abuse its discretion in discharging Juror No. 10. The trial court's investigation revealed a demonstrable reality that Juror No. 10 inserted her own professional knowledge and experience into the deliberations. This was a sufficient basis for the trial court's discharge of Juror No. 10.

Defendant's attempt to recast the issue fails because Juror No. 10's conduct during deliberations constituted misconduct and the trial court was careful not delve into Juror No. 10's thought processes or the subjective deliberation process but instead redirected the jurors' answers when they tried to talk about the subjective deliberative process.

D

According to defendant, the record demonstrates that the other jurors acted to remove Juror No. 10 because she disagreed with their view of the evidence. But defendant attempts to support this argument with conclusory statements lacking evidentiary support. For example, defendant asserts: "Obviously, then, [Juror No. 10's] statement of the standards governing intimate touchings by healthcare providers was highly unpopular with her fellow jurors. . . . Clearly, the majority jurors did not want to hear a view of the evidence that they did not share." We understand the record differently. Our review indicates the other jurors stopped Juror No. 10 from completing her comments because they were concerned she would provide them with information that had not been admitted into evidence during the trial.

11

We review the facts of juror discharge in the light most favorable to the trial court's ruling and defer to its findings of historical fact. (See *People v. Carpenter* (1999) 21 Cal.4th 1016, 1046 [standard for reviewing trial court orders].) We do not search for inferences that, if true, would lead to reversal. (*Grobeson v. City of Los Angeles* (2010) 190 Cal.App.4th 778, 795.) We decline to draw inferences in favor of finding that other jurors acted out of an unstated desire to have Juror No. 10 removed because she disagreed with them.

## E

In addition, defendant argues the trial court's questioning intruded into their mental processes. As we have already explained, however, the trial court was careful not delve into the subjective deliberation process. Defendant's argument lacks merit.

## DISPOSITION

The judgment is affirmed.

/S/
MAURO, Acting P. J.

We concur:

/S/
DUARTE, J.

/S/
RENNER, J.