Filed 8/11/22  P. v. Delgado CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ANDREW ELIJAH DELGADO,<br><br>    Defendant and Appellant. | E077032/E077037<br><br>(Super.Ct.Nos. SWF1907280,<br>BAF1801200)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County. James S. Hawkins, Judge. (Retired Judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) Affirmed.

William J. Capriola, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Charles C. Ragland, Assistant Attorneys General, and Steve Oetting and Heather B. Arambarri, Deputy Attorneys General, for Plaintiff and Respondent.

1

A jury convicted Andrew Elijah Delgado of murder. On appeal, Delgado argues the trial judge erred by instructing the jury on contrived self-defense. We affirm.

I

FACTS

Delgado met the victim, Isaac, sometime in the spring of 2018. Though they got along at first, their relationship eventually soured. By September 2018, the relationship deteriorated so much that they had two large fights, one verbal and one physical.

The first fight started several days before the incident on September 18, 2018, when Isaac asked a mutual friend for money. Delgado told the friend not to give Isaac any, and Isaac got in Delgado's face and yelled at him. Delgado shouted back, and the two yelled at each other until someone else told Isaac to leave. The second fight happened a few days later when Delgado accused Isaac of stealing a gun. Isaac put Delgado in a chokehold, but Delgado managed to break out of the hold and Isaac left.

The next day, September 18, 2018, Isaac called Delgado and a friend to tell them he had a rifle for sale. Delgado was interested in buying the gun, so he and his friend made plans to meet Isaac. Delgado brought a gun with him, but no money.

The three met at the designated place and then went into a nearby alley. Delgado told multiple versions of what happened next. In one version, which Delgado told police during his initial interview, he claimed Isaac continued the argument about the stolen gun from the day before and attacked him again, trying to put him in another chokehold.

Delgado said he got free, but Isaac kept coming. In response, he pulled his gun and shot Isaac.

Later during the same interview, he claimed he and Isaac got into a new argument about the potential rifle sale. He said Isaac had other potential buyers for the gun and those other potential buyers were on their way. Delgado concluded the sale was a setup of some kind and pulled his gun. He told Isaac to come over. As Isaac approached, Delgado told him " '[t]his is what you get homie,' " and opened fire. Isaac tried to run away, but Delgado "put 'em in the sights and that was it. I'm not gonna miss."

At trial Delgado testified that his friend started arguing with Isaac because Isaac didn't actually have the gun he was supposed to be selling. Eventually the friend said he didn't want to talk to Isaac anymore and told Delgado they should leave. Instead, Delgado said he would try to work things out with Isaac. As Delgado approached, Isaac turned and started yelling and moving towards him. Delgado pulled his handgun because Isaac was bigger than him and had tried to attack him once before, so he wanted to make sure Isaac didn't get within arm's reach. After pulling the gun, Delgado saw Isaac turn and reach for something in his pocket or waist. Delgado then opened fire.

Multiple eyewitnesses heard the gunshots. At least four people working at a nearby auto repair store saw two men running from the area where they heard the gunshots. One witness saw one of the men shooting at a person who was running away.

An autopsy later revealed Isaac had been shot twice in the back and once in the arm. All three gunshot wounds were potentially fatal.

Police arrived about 10 minutes after the shooting. The owner of the auto repair shop provided video surveillance footage showing Delgado and his friend walking past the shop after the shooting. Police also discovered three .40-caliber shell casings at the scene.

Police detained and interviewed Delgado in the early morning hours the next day. Delgado initially denied any involvement in the shooting until police showed him the video surveillance, at which point he admitted to shooting Isaac.

The Riverside County District Attorney charged Delgado with murder. (Pen. Code, § 187, subd. (a), unlabeled statutory citations refer to this code.) They also alleged Delgado used a firearm in the commission of the murder. (§ 122053, subd. (d).)[1]

In April 2021 a jury convicted Delgado of murder and found the firearm allegation true. Riverside County Superior Court Judge James S. Hawkins sentenced Delgado to 25 years to life for the murder and a consecutive 25 years to life for the firearm enhancement. Delgado appealed.

## II

## ANALYSIS

Delgado argues the judge erred by instructing the jury using CALCRIM No. 3472, which states, "[a] person does not have the right to self-defense if he or she provokes a

---

[1] While the murder case was pending, the Riverside County District Attorney charged Delgado in a separate case with possession of a weapon in jail. (§ 4502, subd. (a).) In May 2021, he pled guilty in that case. The judge sentenced him to an additional year, to run consecutively with the murder and firearm-use enhancement terms, for a total aggregate term of 51 years to life. Delgado appealed the judgment in this case as well but doesn't argue there was any error.

fight or quarrel with the intent to create an excuse to use force." The People argue Delgado forfeited any challenge to this alleged instructional error, and in any case the instruction wasn't erroneous.

"As a general rule, failure to object to an instruction forfeits the issue on appeal. [Citation.] An exception to the rule of forfeiture arises, however, if the instruction affected the substantial rights of defendant. [Citations.] Defendant's substantial rights are affected if the instruction results in a miscarriage of justice, making it reasonably probable that absent the erroneous instruction defendant would have obtained a more favorable result." (*People v. Campbell* (2020) 51 Cal.App.5th 463, 498-499.)

Delgado forfeited his claim of instructional error by failing to object. Indeed, not only did Delgado fail to object, when asked to comment on the instruction, Delgado's counsel conceded. When specifically asked about this instruction, Delgado's counsel said, "I'll submit to the court on that . . . I don't know that there was any indication, based on the testimony we heard from Mr. Delgado, that he sort of antagonized [Isaac] . . . but I'll submit to the Court in regards to all the evidence that was presented." The judge then asked the prosecutor to identify the evidence that supported giving the instruction, which the prosecutor did. Throughout this colloquy Delgado's counsel remained silent. They didn't object or comment on the prosecutor's representation of the evidence supporting the instruction, nor further object to the instruction itself. The record is therefore clear that Delgado had an opportunity to object to the instruction, and even had an opportunity to contest the factual basis for the instruction and declined to do so.

5

Delgado claims he didn't forfeit the issue because it affects his substantial rights. However, "[a]scertaining whether claimed instructional error affected the substantial rights of the defendant necessarily requires an examination of the merits of the claim—at least to the extent of ascertaining whether the asserted error would result in prejudice if error it was." (*People v. Anderson* (1994) 26 Cal.App.4th 1241, 1249.) Because of this, it is generally appropriate to determine "whether the defendant's substantial rights will be affected by the asserted instructional error and, if so, . . . consider the merits and reverse the conviction if error indeed occurred." (*Ibid.*)

Turning to the merits, we conclude the instruction wasn't erroneous and didn't result in a miscarriage of justice. " '[A]ssertions of instructional error are reviewed de novo.' " (*People v. Hernandez* (2013) 217 Cal.App.4th 559, 568, quoting *People v. Shaw* (2002) 97 Cal.App.4th 833, 838.) "Whether or not the trial court should have given a 'particular instruction in any particular case entails the resolution of a mixed question of law and fact,' which is 'predominantly legal.' [Citation.] As such, it should be examined without deference." (*People v. Hernandez*, at p. 568.)

"It is error to give an instruction which, while correctly stating a principle of law, has no application to the facts of the case." (*People v. Guiton* (1993) 4 Cal.4th 1116, 1129.) Therefore "instructions not supported by substantial evidence should not be given." (*People v. Ross* (2007) 155 Cal.App.4th 1033, 1050, italics omitted.) "Evidence is '[s]ubstantial' for this purpose if it is 'sufficient to "deserve consideration by the jury," that is, evidence that a reasonable jury could find persuasive.' " (*Id.* at pp. 1049-1050.)

6

The parties agree the instruction was legally correct. Therefore, even if Delgado didn't forfeit his claim, the only question before us would be whether there was substantial evidence supporting the allegedly erroneous instruction.

We agree with the People there was substantial evidence to support the instruction. Delgado and Isaac had a contentious personal history; Isaac attempted to choke Delgado only the day before the shooting. This evidence suggests not only that Delgado and Isaac violently disliked each other, but that Delgado could easily provoke Isaac to violence. Delgado and Isaac's pre-existing relationship, which only the day before resulted in a physical fight, made it likely their meeting would get heated almost immediately. This might explain why Delgado showed up to buy a gun with no money but with a gun of his own, suggesting Delgado expected violence and had no intention of buying what Isaac was selling. Finally, once Isaac was heated up, there is evidence Delgado told him to approach before shooting him. In short, there is sufficient evidence to allow a reasonable juror to conclude that Delgado set out to kill Isaac, intentionally provoked Isaac into being visibly and audibly angry, and asked him to approach in order to make him look like the aggressor and set up a sham self-defense claim. Given this evidence, it was not error to give the challenged instruction.

Delgado points to two cases to support his claim that the challenged instruction was erroneous. Both are distinguishable. In the first, *People v. Conkling* (1896) 111 Cal. 616 (*Conkling*), the California Supreme Court reversed the defendant's murder conviction because the challenged jury instruction on contrived self-defense was an

7

incorrect statement of the law. (*Id.* at p. 625 ["This instruction was a trespass upon the rights of the defendant as not containing a sound exposition of the law."].) That is not the case here, as both parties agree that CALCRIM No. 3472 correctly stated the appropriate law. The only question remaining is whether there was a factual basis for instructing the jury on contrived self-defense. *Conkling* has limited value in answering this question. The court did note that "the instruction, regardless of the soundness of the law covered by it, would seem to be without the facts, and not pertinent to the issues under investigation," and that "upon a second trial of this case, the evidence being the same, we think the court could well refuse an application for the giving of the principle." (*Id.* at p. 626.) But that's not the holding. The court reversed Conkling's conviction because the contrived self-defense instruction was legally erroneous.

Next Delgado points to *People v. Rogers* (1958) 164 Cal.App.2d 555 (*Rogers*). In *Rogers* the resident of a home and another person got into a fight after a road rage incident outside the resident's home. The non-resident left but returned with multiple people. The resident was waiting for him with multiple of his own friends, including Rogers. The non-resident advanced on the resident and punched him, at which point the two groups fought one another. In the end, one person died from stab wounds and Rogers was found guilty of murdering him. (*Id.* at pp. 556-557.)

On appeal Rogers claimed the trial judge gave two contrived self-defense instructions in error. First, that "one 'who has sought or induced the quarrel' cannot assert self-defense unless he 'decline[d] further combat, honestly endeavor[ed] to desist

8

therefrom, and fairly and clearly inform[ed] his adversary . . . of his desire for peace, and that he has abandoned the contest.' " (*Rogers*, *supra*, 164 Cal.App.2d at p. 557.) Second, that " '[t]he right of self-defense is not available to either of two persons who by prearrangement, or otherwise by agreement, enter into and carry on a duel or deadly mutual combat,' unless the one claiming self-defense shows that he endeavored to decline further combat." (*Id.* at pp. 557-558.)

The reviewing court found that giving these instructions was erroneous because there was no evidence the defendant was the assailant and no evidence he agreed to enter into combat with the decedent. (*Rogers*, *supra*, 164 Cal.App.2d at pp. 557-558.) It further concluded that the erroneous instructions denied the defendant a defense because "there was no evidence that he attempted to withdraw from the melee or notified his opponents of his desire to do so," which both instructions said were necessary elements of a self-defense claim where the defendant instigated the quarrel. (*Id.* at p. 558.)

Thus, *Rogers* dealt with materially different instructions which included an element not present in the instruction given to the jury here. It also concerned materially different facts, as there was significant evidence Rogers was not the assailant and uncontradicted evidence the decedent's group started the brawl by attacking the resident of the home on his own property. In contrast Delgado went to Isaac of his own accord, did so carrying a deadly weapon, and may have drawn the weapon in order to provoke Isaac rather than in response to Isaac's aggression.

9

Because we conclude the trial judge did not err by giving the challenged instruction, we also conclude that giving the instruction did not result in a miscarriage of justice. Therefore, Delgado forfeited his right to challenge the instruction by failing to object to it below.

## III

## DISPOSITION

We affirm the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

SLOUGH
J.

We concur:


McKINSTER
Acting P. J.


MENETREZ
J.